Joseph F. Gagliardi, J.
The respondent Zoning Board of Appeals for the City of Yonkers has granted a variance which briefly may be described as authorizing the erection of a dwelling containing 74 family units upon a parcel of property in that city, where only a 47- or 48-family unit building could otherwise be constructed. The petitioners in this article 78 proceeding are owners of property contiguous to the subject premises and they urge that this act of the Board of Appeals *1052 was unauthorized and improper. The successful applicants have intervened in this matter and urge that the board acted properly within its legal powers in granting this variance.
The Zoning Ordinance for the City of Yonkers sets forth the powers of the Zoning Board of Appeals in the following manner: “ 10-D-10.3 Every variance granted by the Board of Appeals shall be based upon and accompanied by a specific finding or findings, supported by evidence produced at a public hearing, to the effect that the unique circumstances of the particular case are such as to constitute practical difficulties or unnecessary hardship in the way of carrying out the strict letter of this amending ordinance. ’ ’
Where a variance is sought for the use to which the land has been restricted by the ordinance, “unnecessary hardship” must be established by the applicant (Matter of Otto v. Stenhilber, 282 N. Y. 71, 76). When the request is not to vary the purpose but only the area requirements for building purposes, a showing of practical difficulties alone may be a sufficient basis for exercising administrative power depending upon the local statute (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839).
The Zoning Ordinance of the City of Yonkers permits the Board of Appeals to issue an area variance upon a showing of practical difficulty alone. Judicial review of the acts of boards upon requests for variances or special exceptions is limited to ascertaining if ‘ ‘ there has been illegality, arbitrariness or abuse of discretion” for the “courts do not sit to supervise the discretionary acts of the hundreds of town boards and town zoning boards in this State ” (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24).
The property involved in this proceeding is located at 238-250 North Broadway in the City of Yonkers and is designated as Lots 114^118-120 in Block 2091 on the tax map. They are in an “M” zone classification which has a permitted use of residential apartments up to medium density. In an “ M ” zone, 800 square feet of lot area must be allocated for each family unit contemplated. These three lots measure some 198 feet by 192 feet, totaling approximately 38,400 square feet which, under the ordinance, can accommodate 48 family units. In the “ M ” zone, each family unit of the building must contain a minimum average of 750 square feet of living space.
The proposed structure differs from one which could be erected without a variance in only one respect and that is the number of units contained within the building framework. The *1053 largest apartments will consist of only 3% rooms, containing but 2 bedrooms, while the greater majority of the units are planned for a single bedroom and are described as 2%-room apartments. Thus while 48 one, two, three or even four-bedroom apartments could be placed within the building conforming to the required 800 square feet lot minimum unit requirement, the variance which was sought and granted reduced the requirement from 800 to 519 square feet thus permitting the greater number of smaller units.
Section 5-A of the Yonkers Zoning Ordinance divides the city into 13 classes of districts, 9 of which are classified under the general heading ‘ ‘ Residence Districts ” and 4 under the title “ Non-Residential District.”
The following categories appear in the Residence District: “ MG- ” — apartment houses, low density, wherein each family unit must receive a minimum land allocation of 1,500 square feet; “ M ”— apartment houses, medium density, wherein the minimum square footage for each family unit is set at 800; “ A-2 ’’- — elevator apartment houses, high density; and “ A-l ” — elevator apartment houses, highest density. The two latter categories have no requirement that a minimum amount of land area must be allocated to each family unit.
Petitioner argues that the variance here alters the use with respect to this property while the board, as well as the applicant intervenors, contend that all that is involved is an area variance.
In the opinion of this court what is involved here is a combination area and use variance (cf. Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839, supra; Matter of Simon v. Michaelis, N. Y. L. J., May 31, 1961, p. 18, col. 6 [Supreme Ct., Nassau County]). To allow 74 units or 51% more than the maximum permitted by the ordinance by reducing the minimum area requirement from 800 feet to 519 feet, a reduction of some 35%, not only involves all of the considerations of an area variance, but it also does away with the classification of medium density apartments and for all purposes substitutes the classification of either the high density, “ A-2 ”, or the highest density apartments, “ A-l.” When classifications are based in part upon density standards, a substantial change in the density capacity achieves a complete change in classification. Under such circumstances both practical difficulties and unnecessary hardship must be established to permit the issuance of this type of variance (cf. Matter of Otto v. Steinhilber, 282 N. Y. 71, supra; Matter of Village of Bronxville v. Francis, supra).
*1054 In Matter of 293 North Broadway Corp. v. Lange (282 App. Div. 1056), the Appellate Division, Second Department, confirmed the grant of a variance by the Yonkers Zoning Board of Appeals permitting the erection of a 55-unit apartment house on property in an “M” zone, where only a 42-unit structure could be constructed based upon the 800 square foot mini-mum area requirement. The record in that case showed that the property possessed an unusual topographical character which inhibited a development in accordance with the zoning requirements.
The decision of the board in that case stated:
‘ ‘ Unnecessary hardship is indicated by the fact that if the apartment house is built to comply with ‘ M ’ zone restrictions, only 42 apartments can be built here and the land cannot yield a reasonable return on the investment required.
“ The plight of the owner is due to the unique circumstances caused by the topography of the plot. There is a sharp drop m xne rear which adds to the expense of building. Due to the high cost of labor and material, the land in question cannot yield a reasonable return if only 42 families are allowed, according to the ‘ M ’ District restrictions. ’ ’
The variance in Matter of 293 North Broadway Corp. v. Lange (supra) did not entail the substantial deviation from the basic zone classification which is present here and was based upon more substantial and proper evidence of necessity so as to permit reasonable men to exercise a judgment (cf. Matter of Village of Bronxville v. Francis, supra).
Even if the grant of this variance were to be tested by the reqxdrement that only practical difficulties be exhibited, the result would be the same as the record is devoid of any evidence to support such conclusion. “No definition of ‘ practical difficulties ’ has been laid down by ordinance, statute, case law or text book” (Matter of Wachsberger v. Michalis, 19 Misc 2d 909, 911). Nevertheless a variance cannot be made to rest upon a finding that while the property can produce a reasonable profit or income upon the investment if it conforms to the ordinance, it will produce a greater yield if used in a different way (cf. Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39; Matter of Stillman v. Board of Stds. & Appeals of City of N. Y., 247 N. Y. 599, affg. 222 App. Div. 19; Matter of Joyce v. Dobson, 255 App. Div. 348).
The evidence that the general area about this property has been the subject of extensive apartment house construction commanding rents from $35 to $42 per room, and that there are *1055 apartment vacancies in the three-hedroom class, while there is a dire need for one-bedroom apartments for older people, does not constitute practical difficulties restricting construction of a building conforming to the zoning ordinance. Without further support in the record this testimony, as well as the opinion of the planning expert who urged repeal of the density limitations as impractical and without meaningful purpose, cannot be utilized by the Zoning Board of Appeals which must operate under the ordinance. In such a case, these considerations are valid propositions to be addressed to the legislative body, here the Common Council which has the power to determine, in its sole wisdom, whether the ordinance meets the needs of the people of the city or whether it should be changed.
One George R. Piantadosi, a real estate broker and appraiser, testified that based on his recent personal survey he determined that the surrounding apartment houses had some 20 vacancies in two- and three-bedroom units while waiting lists were present for one-family apartments. The salutary desire on the part of the applicants is to be commended for indeed adequate housing to meet the needs of all of our citizens is a most important and urgent problem of our time. The difficulty in this case, however, is one which confronts the public only since the applicants have not demonstrated that they may not construct 48 one-bedroom efficiency apartments in a building of smaller size, covering less area, achieve a reasonable return on their investment and meet all of the requirements of the Zoning Ordinance. The testimony does not show that this is not possible.
The affidavit of George R. Piantadosi, submitted along with his oral testimony, recites that:
“ The principal governing factor in land acquisition costs for apartment construction is the cost of land per apartment dwelling unit. Under the existing Zoning Ordinance, this cost would be approximately $2,000 per apartment, which is substantially higher than the market in this area can afford, based on the anticipated annual rent roll. By granting the relief requested, this amount is reduced to under $1,200 per apartment, which is fair and economically prudent for the neighborhood.
‘ ‘ It should again be emphasized that neither the exterior appearance of the building nor its location on the plot is in the slightest way affected by the granting of this application.
“ In addition to the normal market for small apartments in this area, the Petitioners plan to orient many units so as to provide specific housing for the Aging. The market for this type of unit in this area is pronounced.
*1056 “ The economic return to the Petitioners from 48 units of apartments averaging 5.3 rooms per apartment (which is the average of the buildings between War burton Avenue and Glen-wood Avenue on North Broadway) would result in a lesser economic return than the proposed 74 units averaging 4 rooms per dwelling unit.”
At the close of the hearing, the chairman of the Zoning Board asked this witness why the board should consider 74 rather than the normal number of units and he responded:
‘ ‘ Because there is a demand in the area for small apartments and, secondly, because it does not in any way affect the neighbors with respect to light, air, appearance or density.
“ The building with 48 Units would appear the very same as it will with 72 Units.”
The only monetary proof presented to the board was that the total cost of construction was estimated at $86,000, apparently for either a 74- or 48-unit building since it is merely a question of location of interior walls for the most part. This figure allows for the projection of a unit cost of $2,000 or $1,200, but this figure is meaningless and innocuous to establish that the property could not yield a reasonable return if used in accordance with the ordinance. The opinion expressed by the expert witness is not supported by any facts and thus cannot be utilized as probative evidence. There is no testimony as to what a reasonable return on this type of investment is, the purchase price paid and to be paid in assembling this plot, the projected and anticipated rent roll, plus the expenses and carrying charges including estimated and anticipated financing costs (cf. Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, supra).
Consequently as the record before the court fails to demonstrate unnecessary hardship or even a practical difficulty, the petition for review is granted and the action of the board is annulled, and the board is directed to notify the Building Inspector that this variance has been annulled within 5 days after service upon it of a copy of the judgment to be entered hereon.