Scileppi, J.
These three proceedings have been instituted to review the determination of the Zoning Board of Appeals of the City of Yonkers which granted a variance to Westview Towers Corp. permitting the construction of a 156-family apartment building. The parcel involved is roughly rectangular with a 250-foot frontage on North Broadway and a depth of about 500 feet. It contains an area of 123,250 square feet. It is undisputed that the land slopes sharply downward so that the westerly boundary is about 80 feet below the easterly frontage.
At the public hearing, Bernard Fiumara, the president of Westview, testified that the corporation had owned the property for about five years and that, as originally improved, it contained several outbuildings as well as a large house which was to be remodeled into an apartment house. Following a fire, the large building was condemned and later razed. Having attempted to comply with the zoning requirements of the ‘ ‘ MG ’ ’ District (apartment houses, low density), and having determined that, because of the 80-foot incline, it would necessitate additional expenditures of $225,000 to $250,000 for retaining walls and extra foundations, Westview sought a variance from the board.
The applicable zoning ordinance divides the location where apartment houses may be built into four districts: “MG” (apartment houses, low density), “M” (apartment houses, medium density), “ A-2 ” (apartment houses, high density), “ A-l ” (apartment houses, highest density). In the MG District, the maximum permitted height is three stories but not exceeding 39 feet. Westview’s proposed building would be 55 feet high, six stories in the front and nine in the rear. The maximum permitted floor area ratio for an apartment in an *254 MG District is 1.00. Westview’s building will have a floor area ratio of 1.58. The minimum permitted lot area per family is 1,500 square feet. Westview’s building will have a lot area per family of 790 square feet. A variance with regard to all these particulars was granted by the board.
The petitioners, seeking to annul the grant of the variance, brought these proceedings in Supreme Court, Westchester County. Special Term (Dillon, J.) dismissed the petitions and upheld the grant of the variance. The Appellate Division, reversing Special Term, considered the variance requested to be a use variance or at least a combined use and area variance and remitted the matter to the zoning board to take proof which would satisfy the requirements of the leading use variance case (Matter of Otto v. Steinhilber, 282 N. Y. 71). Since the appeal is here pursuant to a stipulation for judgment absolute, our function is limited to ascertaining whether, as a matter of law, the Appellate Division was in error when it directed the remission to the board (Cohen and Karger, Powers of the New York Court of Appeals, p. 303).
Obviously, the pivotal question on this appeal is whether we are concerned with a use variance or an area variance. Generally speaking, an area variance involves no change in the essential character of the zoned district; therefore, the neighborhood considerations are not as strong as in a use variance (Matter of Hoffman v. Harris, 17 N Y 2d 138; Matter of Village of Bronxville v. Francis, 1 N Y 2d 839, affg. 1 A D 2d 236). Once a variance is properly characterized, the record must contain substantial evidence of certain elements before the variance, if granted, will be permitted to stand.
A variance relating to the height of an apartment house, in an area zoned for apartments, is an area variance and not a use variance (see Matter of Foley v. Feriola, 23 A D 2d 498, mot. for lv. to app. den. 16 N Y 2d 482; Matter of Satin v. Board of Stds. (& Appeals, 28 Misc 2d 931, affd. on opn. below 15 A D 2d 531, mot. for lv. to app. den. 11 N Y 2d 643 [holding that a variance to erect a larger apartment house in a location zoned for apartments is an area variance]).
The Appellate Division, as well as the respondent, places great reliance on Matter of Markovich v. Feriola (41 Misc 2d 1051, affd. on other grounds 22 A D 2d 691). In Markovich the lower *255 court, interpreting the Yonlcers zoning ordinance, held that a change in density standards creates a change in classification with the consequence that both practical difficulties as well as unnecessary hardship must be proven in order to obtain the variance (41 Mise 2d, p. 1053). In other words, the approach taken classified the variance sought as a combined area and use variance, requiring the higher standard of proof, i.e., that of the use variance. The Appellate Division, specifically not characterizing the variance, affirmed on the narrow ground that there was a failure to comply with the local zoning ordinance (Matter of Markovich v. Feriola, 22 A D 2d 691). We disapprove of the lower court’s holding in Markovich, and we hold that, in an area zoned for apartment houses, to seek a variance of height, floor area, and density is to seek an area variance because the essential use of the land is not being changed. In such a situation, the essential use remains the same (apartments), although the particulars (height, lot area, floor area ratio) of said use may be different. But to obtain such a variance, practical difficulties must be shown (Matter of Village of Bronxville v. Francis, 1 N Y 2d 839, affg. 1 A D 2d 236, supra).
The only remaining question is whether the record contains substantial evidence that the petitioner is faced with practical difficulties (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24). Having made a personal inspection of the premises, the board found that the 80-foot difference in grade between the front and rear of the lot required unusual site preparation and costly foundations. In addition, the finding was made that the unusual topography was not common to the general condition of the over-all zone. The record contains evidence (1) that it would cost at least $225,000 more to construct this building because of the unusual topographical problem—the 80-foot incline; (2) if the zoning restrictions were followed because of the 80-foot incline, an apartment house would not yield a reasonable return, and (3) the granting of the variance would not change the character of the district.
Since this is an area variance, and since the record contains ample proof of practical difficulties occasioned by the 80-foot drop, the order of the Appellate Division should be reversed and that of the Supreme Court reinstated.
*256 Chief Judge Desmond and Judges Ftjld, Van Voobhis, Bubke, Beegan and Keating concur.
In each proceeding: Order of Appellate Division reversed and the order and judgment of Special Term reinstated, with costs in this court and in the Appellate Division.