**Gardner E. PALMER et al., Petitioners,**

v.

**BOARD OF ZONING ADJUSTMENT for the District of Columbia, Respondent, Emergency, Inc., Intervenor.**

**No. 5884.**

District of Columbia Court of Appeals.

Argued Oct. 26, 1971.

Decided Feb. 17, 1972.

536

Milton M. Gottesman, Washington, D. C., with whom William H. Greer, Jr., Washington, D. C., was on brief, for petitioners.

C. Francis Murphy, Corp. Counsel, Richard W. Barton and Earl A. Gershenow, Asst. Corp. Counsels, entered appearances for respondent but filed no brief.

Frank J. Costello, Washington, D. C., for intervenor. Warren C. Nighswander, Washington, D. C., entered appearance for intervenor.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

HOOD, Chief Judge:

Petitioners[1] seek review of an order of the Board of Zoning Adjustment[2] (hereinafter the Board) granting a variance of the off-street parking regulations to intervenor, Emergency, Inc. (hereinafter Emergency).

Emergency is a District of Columbia corporation. As tenant of the Georgetown premises at 2813 M Street, N.W., located in a C-2-A district (community business center of medium density), Emergency has been authorized under a certificate of occupancy to operate as a combination restaurant-record shop. The business is staffed and managed by young people. Its purpose is to provide contemporary entertainment in a nonalcoholic surrounding through educational and musical offerings. Appeal to the community's youth is sought as an alternative to the streets. Aside from selling records Emergency provides live music on weekends. Patrons are admitted to the premises upon payment of an admission fee entitling them to a sandwich and soft drink. The record shop comprises the front area of the premises. In the rear there is an entertainment stage upon which bands play and a bar where food and drinks are prepared. Although random seats are available there are no waiters or tables to facilitate the consumption of food. Patrons may gather in any part of the shop and dancing is permitted in the entertainment area. The bulk of Emergency's revenues is used to furnish live rock music.[3]

Emergency desires to raise additional revenues by expanding its operation to include such activities as film workshops, repertory theater events, benefits and private party rentals. These activities would presumably require a public hall certificate, the issuance of which is conditioned upon compliance with the off-street parking regulations.[4] Section 7205 of the Zoning Regulations requires that the parking spaces be located on the same lot with the structures they are intended to serve or elsewhere provided "[s]uch spaces are so located as to furnish reasonable and convenient parking facilities . . . but in no case shall they be farther than 800 feet from any lot line of the lot upon which the structure is located." Zoning Regs. § 7205.33. (Definitional italics omitted.)

Since no space for on-site parking is available at 2813 M Street, Emergency applied to the Board for a special exception pursuant to Zoning Regs. § 7205.3 to provide off-street parking within 800 feet of the premises. After a hearing the Board issued an order denying the application on the ground that the proposed parking lot was more than 800 feet from the M Street property.[5] Thereafter, Emergency applied to the Board for a variance from the "800-foot" requirement. Following a brief hearing at which the record of previous litigation was incorporated therein, the

1. Petitioners are The Citizens Association of Georgetown, organized for "the purpose of preserving the historic character and developing the aesthetic values of Georgetown," and individual property owners in proximity to Emergency, Inc.

2. D.C.Code 1967, § 11-722 (Supp. IV, 1971).

3. The nature of Emergency's operation has been the subject of prolonged litigation before the Board and the United States District Court. Petitioners have taken the position that Emergency has been operating as a public hall in violation of its limited authorization as a restaurant-record shop. On remand to the Board after a hearing in the District Court, it was concluded that "the public hall use is the primary use of the premises" thereby requiring Emergency to obtain a certificate of occupancy as such. Subsequently on April 22, 1971 the District Court suit was dismissed without prejudice by agreement of all parties.

4. Emergency has indicated that under the pertinent schedule in § 7202.1 of the Zoning Regulations it must provide approximately 26 parking spaces as a public hall whereas a restaurant-record shop calls for minimal or no spaces.

5. It was determined that the proposed lot, located at 1034-29th Street, N.W., was 851.34 feet (walking distance) from Emergency.

Board issued an order granting a variance to Emergency. The petition for review in this court ensued.

Petitioners contend that the Board's action was arbitrary, capricious, procedurally defective and a misconstruction of the statutory prerequisites governing variances. Agreeing with the assertion that the Board's application of the statutory criteria was erroneous, we reverse. In addition we point out certain deficiencies in the Board's order that make intelligent judicial review a difficult task. For instance, the findings merely state undisputed facts, see D.C.Code 1967, § 1–1509(e) (Supp. IV, 1971), and the opinion merely echoes in large part the statutory language authorizing the grant of a variance. In short, the Board failed to set forth findings of fact of a basic or underlying nature necessary to a determination of the ultimate facts, usually stated in terms of the statutory criteria.[6] Without such findings there is no guarantee that "cases [will] be decided according to the evidence and the law, rather than arbitrarily or from extra-legal considerations".[7] Moreover, scrupulous fact-finding facilitates compliance with § 8202.64 of the Zoning Regulations requiring that "full reasons" be entered in the minutes book for all decisions of the Board —a regulation having more than just record-keeping value.[8]

We turn now to interpretation of the variance law. D.C.Code 1967, § 5–420 provides for a Board of Adjustment to grant variances pursuant to the following:

(3) Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or *other extraordinary or exceptional situation or condition of a specific piece of property*, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in *peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property*, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. (Emphasis supplied.)

The Board's opinion states:

The only factor preventing Emergency from obtaining the public hall certificate of occupancy which it now desires is the requirement of . . . off-site parking within 800 feet (sidewalk measurement) . . . which cannot technically be met because of the condition of the property and the immediate area adjacent thereto . . . consequently, an "extraordinary and exceptional situation or condition of a specific piece of property" exists such that the strict application of Section 7205.33 of the Zoning Regulations "would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property" and upon Emergency.

Petitioners' argument is essentially two-fold: (1) There is no "extraordinary or exceptional situation or condition" of the M Street property within the meaning of the statute. Rather petitioners note the widespread lack of off-street parking in the Georgetown area and the ordinary dimensions of the lot in question. (2) There

---

6. *See* Saginaw Broadcasting Co. v. FCC, 68 U.S.App.D.C. 282, 287–289, 96 F.2d 554, 559–561, cert. denied, Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938).

7. *Id.* at 287, 96 F.2d at 559.

8. *See* International Institute of Interior Design, Inc. v. Scrivener, 124 U.S.App. D.C. 102, 361 F.2d 556 (1966); Robey v. Schwab, 113 U.S.App.D.C. 241, 307 F.2d 198 (1962).

has been no showing of "exceptional and undue hardship upon the owner" resulting from the strict application of the "800-foot" requirement. Petitioners maintain that the "hardship" contemplated by the statute requires a showing of the owner's inability to make any reasonable use of his property in a manner authorized by the Zoning Regulations.[9]

## I.

We have found few cases construing the term "extraordinary or exceptional situation or condition of a specific piece of property" because most states have literally adopted or largely fashioned their zoning legislation on the Standard State Zoning Enabling Act, recommended by the United States Department of Commerce in the 1920's, which differs in part from Section 5–420.[10] It appears that the Standard Act embodies more liberal provisions than Section 5–420. The niceties between the two statutes do not concern us, however, because developing case law and commentary analysis have provided adequate principles to guide the application of our statute.[11]

■■■ To support a variance it is fundamental that the difficulties or hardships be due to unique circumstances peculiar to the applicant's property and not to general conditions in the neighborhood.[12] If the circumstances affect the whole area the reasonableness of the regulations are challenged and the proper remedy is to seek an amendment of the regulation rather than a variance.[13] To grant a variance when the conditions are not unique would result in similar demands from neighboring property owners. Approval of such requests would in effect be amending the Zoning Regulations thereby undermining the function of the Zoning Commission whose task it is to make the basic legislative judgments in drafting regulations.[14]

Our research has disclosed two states with provisions substantially identical to ours—Delaware and New Jersey. A Delaware court defined the term "extraordinary and exceptional situation or condition" in reference "to an economic, geographic or topographic situation or condition, connected with or affecting the lot for which the variance is sought . . . ."[15] The New Jersey Supreme Court found an "extraordinary and exceptional situation or condition" in unusual circumstances where an owner sought to erect a commercial use (gasoline station) on a lot, zoned partly for residence and partly for business, located in a predominantly business community, split by a zone boundary and surrounded by commercial properties.[16]

Here the Board concluded that the "800-foot" requirement could not be met because of "the condition of the property

---

9. In their reply brief petitioners also contend that the variance would impair the intent, purpose, and integrity of the zoning plan. Finding noncompliance with basic elements of Section 5–420, we need not reach this contention concerning the proviso.

10. *See* Puritan-Greenfield Improvement Ass'n v. Leo, 7 Mich.App. 659, 153 N.W. 2d 162, 166 n. 11 (1967). The Standard Act authorizes variances, "where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship".

11. An examination of the legislative history reveals no particular significance in the distinctive wording of Section 5–420, enacted several years after the promulgation of the Standard Act.

12. *See, e. g.*, Puritan-Greenfield Improvement Ass'n v. Leo, *supra* note 10, at 168–169; Brown v. Beuc, 384 S.W.2d 845, 852–853 (Mo.Ct.App.1964); Alumni Control Bd. etc. v. City of Lincoln, 179 Neb. 194, 137 N.W.2d 800, 802 (1965); Otto v. Steinhilber, 282 N.Y. 71, 24 N.E. 2d 851, 853 (1939).

13. 8 E. McQuillin, The Law of Municipal Corporations § 25.167, at 542–45 (3d ed. rev. vol. 1965).

14. 74 Harv.L.Rev. 1396, 1403 (1961).

15. Application of Julian, 53 Del. 175, 167 A.2d 21, 27 (Del.Super.Ct.1960).

16. 165 Augusta Street v. Collins, 9 N.J. 259, 87 A.2d 889, 891 (1952).

and the immediate area adjacent thereto". The findings fail to disclose what was unique about the condition of the property or its adjacent area. Emergency argues that the location of the lot "can supply the unique hardship required to support a variance", citing in support thereof a statement from a treatise.[17] The assertion is made that if Emergency was located "but a short distance from 2813 M Street in the direction of the [proposed] parking lot," the "800-foot" requirement could be complied with. We have examined the cases cited by McQuillin and find them ill-adapted to intervenor's argument. In some cases the uniqueness of the location was supplied by the character of the uses surrounding the applicant's land which made it singularly unsuitable for a permitted use.[18] Several cases involved unique conditions of a topographical nature giving rise to hardship.[19] The irregular shape of a plot provided the requisite showing in another case.[20]

■ In the instant case the surrounding uses were compatible with any number of permitted uses in a C-2-A district including a public hall use and the dimensions and topography of the plot were in no way irregular. The lack of off-street parking is a problem faced by many establishments in Georgetown. Moreover, in support of a showing of uniqueness, Emergency has not shown that the shops located a short distance from 2813 M Street in a direction *away* from the proposed parking lot could satisfy the "800-foot" requirement. The only aspect about the location in question that is unique is Emergency's desire to utilize it as a public hall. Such a considera-

tion cannot support a variance. Consequently, there is no "extraordinary or exceptional situation or condition" with respect to the M Street property.

## II.

The second argument petitioners raise concerns another statutory requisite which must be satisfied to support a variance. The claim is that Emergency has failed to show "hardship upon the owner". Specifically, it is contended that "exceptional and undue hardship" should be construed to require a showing of a situation where in the absence of a variance the property cannot be reasonably used in a manner consistent with the Zoning Regulations; that the hardship must be shown to fall upon the owner and that, at the most, the evidence here relates to the tenant's predicament rather than the owner's hardship.

Emergency contends that the variance requested is an area variance as distinguished from a use variance; that, consequently, the Board merely had to have evidence before it that, in the absence of a variance, "practical difficulties" would result; that the applicants were acting as agents for the owner and that, in any event, there was sufficient evidence to support a showing of hardship upon the owner as well as the tenant.

In several states where the applicable standard is phrased in the disjunctive— "practical difficulties or undue hardship" —area variances have been allowed on proof of practical difficulty only while use variances require proof of hardship, a somewhat greater burden.[21] The apparent

17. 8 E. McQuillin, *supra* note 13, § 25.167, at 547–548.

18. City of Loves Park v. Woodward Governor Co., 14 Ill.2d 623, 153 N.E.2d 560 (1958); Frankel v. City of Baltimore, 223 Md. 97, 162 A.2d 447 (1960).

19. North American Holding Corp. v. Murdock, 9 Misc.2d 632, 167 N.Y.S.2d 120 (Sup.Ct.1957); Bonitati Bros., Inc. v. Zoning Bd. of Review, 99 R.I. 49, 205 A.2d 363 (1964); Lincourt v. Zoning Bd.

of Review, 98 R.I. 305, 201 A.2d 482 (1964); Bergson Co. v. Zoning Bd. of Review, 92 R.I. 226, 167 A.2d 844 (1961).

20. Fiorilla v. Zoning Bd. of Appeals, 144 Conn. 275, 129 A.2d 619 (1957).

21. Puritan-Greenfield Improvement Ass'n v. Leo, *supra* note 10, 153 N.W.2d at 166; Alumni Control Bd. v. City of Lincoln, *supra* note 12, 137 N.W.2d at 802; Village of Bronxville v. Francis, 1 A.D.2d 236, 150 N.Y.S.2d 906, 909 (Sup.Ct.),

reason for this difference is that an area variance, relating to restrictions such as side yard, rear yard, frontage, setback or minimum lot requirements, does not alter the character of the zoned district,[22] whereas a use variance seeks a use ordinarily prohibited in the particular district. On the other hand, it has been said that the term "practical difficulties" has no significance in itself but the phrase "practical difficulties or unnecessary hardship" should be construed as a whole.[23] Similarly, the New Jersey Supreme Court, under a statute identical to ours, expressed the view that there is no practical difference between the two phrases and that where "peculiar and exceptional practical difficulties" exist so does "undue hardship".[24]

As the New Jersey court recognized, situations involving practical difficulty will also involve hardship to some extent, but it is clear that whichever construction of the statute is taken the burden of proof is greater for a use variance than an area variance. We agree that a more stringent showing is warranted with respect to the more drastic relief inherent in a use variance. Viewing the difference between "practical difficulties" and "undue hardship" as a matter of degree, we follow those decisions which construe the statute in the disjunctive,[25] applying the former criterion to area variances and the latter to use variances.

Variance of the off-street parking regulation here concerned does not strictly fall

into either category. Suffice it to say that it is a hybrid with aspects of both.[26] It is unnecessary to elaborate on this distinction for the record reveals that Emergency fails to meet either standard.

The statute expresses in clear and unambiguous language that the showing, whether of "practical difficulties" or "undue hardship", must be upon the *owner*. The legislative history is also instructive on this point:

> The duty of this board is to grant variances from the strict application of the zoning regulations in cases where otherwise a hardship would be worked upon the *owner*. (Emphasis supplied.)

H.R.Rep. No. 2418, 75th Cong., 2d Sess. 2 (1938). The cases cited here and those researched are concerned with the plight of the owner or one with an incident of ownership.[27] Statements by text writers indicate the same.[28] Therefore in evaluating the Board's order we look only to evidence of hardship or difficulty befalling the owner.

*Exceptional and Undue Hardship*

The variance procedure has many purposes. It is designed to provide relief from the strict letter of the regulations, protect zoning legislation from constitutional attack, alleviate an otherwise unjust invasion of property rights and prevent usable land from remaining idle.[29] These purposes infuse meaning into the

aff'd 1 N.Y.2d 839, 153 N.Y.S.2d 220, 135 N.E.2d 724 (1956). *See* 2 A. Rathkopf, The Law of Zoning and Planning 45–1 (3d ed. 1962).

22. *See* Village of Bronxville v. Francis, *supra* note 21.

23. Brown v. Beuc, *supra* note 12, 384 S.W. 2d at 852.

24. 165 Augusta Street v. Collins, *supra* note 16, 87 A.2d at 891. *See* Clouser v. David, 114 U.S.App.D.C. 12, 309 F.2d 233 (1962), turning on another phrase of § 5–420.

25. *See* note 21, *supra*.

26. *See* Alumni Control Bd v. City of Lincoln, *supra* note 12, 137 N.W.2d at 803.

27. Richman v. Philadelphia Zoning Bd. of Adjustment, 391 Pa. 254, 137 A.2d 280 (1958) cited by McQuillin to the contrary appears to be decided under a statute materially different from Section 5–420.

28. 2 A. Rathkopf, *supra* note 21, at 45–6, 45–28, 29; 8 E. McQuillin, *supra* note 13, at 525–526.

29. *See* 8 E. McQuillin, *supra* note 13, at 512–513; 74 Harv.L.Rev. 1396 (1961).

phrase "exceptional and undue hardship". The authorities widely recognize, as petitioners contend, that the hardship envisioned by the statute must be great. A use variance cannot be granted unless a situation arises where reasonable use cannot be made of the property in a manner consistent with the Zoning Regulations.[30] An inability to put property to a more profitable use or loss of economic advantage is not sufficient to constitute hardship.[31] It must be shown that the regulations "preclude the use of the property in question for *any* purpose for which it is reasonably adapted, i. e., can the premises be put to *any* conforming use with a fair and reasonable return arising out of the ownership thereof?"[32] (Emphasis in original.)

In substance Emergency's "hardship" argument is that 2813 M Street cannot be used as a public hall by the tenant or the owner under the present zoning plan as long as current parking conditions continue in Georgetown. There is no evidence in the record that the owner cannot reasonably adapt the premises or find a tenant to produce a reasonable income for a use in conformance with the off-street parking regulations. Accordingly, the record before us fails to support a finding of "hardship upon the owner".

*Peculiar and Exceptional Practical Difficulties*

A clear definition of what constitutes "practical difficulties" has not been found.[33] Where substandard lots (those having a smaller size or lesser frontage than the minimum) are involved the practical difficulty is perforce of an extreme nature—an inability to put the lot to any conforming use. In these instances the concepts of "practical difficulty" and "undue hardship" overlap so that the courts often tend to speak of them synonymously. The statute, however, does not require the owner to make such a stringent showing with respect to area variances. Generally it must be shown that compliance with the area restriction would be unnecessarily burdensome.[34] The nature and extent of the burden which will warrant an area variance is best left to the facts and circumstances of each particular case. But it is certain that a variance cannot be granted where property conforming to the regulations will produce a reasonable income but, if put to another use, will yield a greater return.[35] The tenant's financial problems in operating a restaurant-record shop are immaterial. At issue are the difficulties of the owner. The record is manifestly devoid of evidence bearing on the difficulties of the owner, financial or otherwise. It cannot be said that the tenant's financial distress has caused the owner any difficulties whatsoever.

We wish to stress that the discretion of the Board is not challenged by our decision herein. The objectives and aspirations of the youthful members who founded Emergency go unquestioned and the grant of a variance perhaps would not result in appreciable harm to the community. However, the issue here is not the reasonableness or feasibility of the Board's decision but rather compliance with the statutory requisites. On the basis of the foregoing the decision of the Board is

Reversed.

30. For a comprehensive and instructive analysis of the "hardship" standard see Puritan-Greenfield Improvement Ass'n v. Leo, *supra* note 10. A checklist of factors to consider in passing upon an application for a variance is succinctly set forth at 2 A. Rathkopf, *supra* note 21, at 45–5, 6.

31. Searles v. Darling, 46 Del. 263, 83 A.2d 96, 100 (Del.1951); 8 E. McQuillin, *supra* note 13, at 552–53.

32. 2 A. Rathkopf, *supra* note 21, at 45–5.

33. *See* Wachsberger v. Michalis, 19 Misc. 2d 909, 191 N.Y.S.2d 621, 624 (Sup.Ct. 1959); 2 A. Rathkopf, *supra* note 21, at 45–26.

34. 2 A. Rathkopf, *supra* note 21, at 45–28.

35. Markovich v. Feriola, 41 Misc.2d 1051, 247 N.Y.S.2d 29, 33 (Sup.Ct.1963).