**James M. RUSSELL and Robert L. Treanor, Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Thomas K. Hannan, Intervenor.**

**No. 13013.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1978.

Decided June 5, 1979.

---

James M. Russell, Washington, D. C., for petitioners.

Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Michael J. Conlon, Washington, D. C., with whom William T. Hannan, Washington, D. C., was on the brief, for intervenor.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

Petitioners challenge an order of the District of Columbia Board of Zoning Adjustment (BZA) granting a variance from the minimum lot area requirement of 5,000 square feet and, thus, authorizing construction of a single-family detached dwelling on a substandard lot.[1] Messrs. Russell and Treanor, who own property in the immediate vicinity of the disputed lot, attack the Board's action on procedural and substantive grounds, these being (1) defective notice, (2) misapplication of the statutory standard governing area variances, and (3) erroneous and deficient findings of fact.[2] We affirm.

## I.

Fronting on 5730 Utah Avenue, N.W., the lot at issue is bounded on the remaining sides by a public alley, a contiguous lot also owned by seller, and a neighbor's property. The lot has served as a backyard to seller's home since 1964 when the two adjacent parcels were purchased from the prior owner. It is an unimproved lot of record, measuring 3,834.45 square feet in area. The buyer, who plans to build a personal residence on the site, entered into a contract contingent on obtaining a lot area variance. He applied in June 1977 for a variance of 1,165.55 square feet, on behalf of the owner.

At a public hearing held before the BZA on October 19, 1977, the application was opposed by the Chevy Chase Citizen's Association and property owners in the immediate vicinity. The neighborhood opponents were apprehensive that a house on a substandard lot would be out of harmony with the area, create a deleterious precedent, intrude on the privacy and aesthetic views of neighbors, create additional congestion and decrease property values. In its findings of fact, the Board determined that the parcel at issue was the only property on the block divided into two record lots and predating current zoning regulations. Despite opponents' claims that the house would sit on a steep knoll, the Board found only a continuous gentle slope in the area.

Applying the statutory standard for area variances to the facts, the BZA found the requisite showing of practical difficulty satisfied by the applicant. Given the deficient lot size and the residential zoning, the Board concluded "there is no other use to which [the lot] can be put and denial of the application would effectively deprive the

---

1. See District of Columbia Zoning Regulations, art. 33, § 3301.1 for minimum lot area requirements in R–1–B residence districts.

2. Petitioners also assert applicant's lack of standing as a contract purchaser to seek a variance. Because the contract purchaser applied on behalf of the owner, as his authorized agent, we have no need to reach that argument.

owner of any use of that lot." The order further stated:

> The Board concludes that the proposed house would generally be in character with the kind of houses otherwise found in the area, as no variances other than lot area are required. The Board notes that there is little or no vacant land left in this area, and that the Board is therefore not setting a precedent for approving houses on lots that are now considered substandard. The Board concludes that the requested variance can be granted without substantial detriment to the public good and that the construction of a house on this lot would not adversely affect the legitimate rights of surrounding property owners.

## II.

Initially, petitioners allege a defect in the official notice of the BZA hearing required by statute (D.C.Code 1978 Supp., § 1–1509(a)), regulation (Zoning Regs., art. 82, § 8203.5), and due process. Notice of the time, place and nature of the hearing was effected by a sign posted on the lot, letters mailed to addresses within 200 feet of the lot, and by newspaper publication. Petitioners contend, however, that even though the relevant zoning regulation was cited (§ 3301.1), the scheduled action was erroneously described as a lot width variance instead of a lot area variance, preventing reasonable notice to interested parties. We find this argument without merit. Although petitioners attended the hearing and were not themselves prejudiced by any deficiency, our conclusion does not rest on

standing to raise notice defects. Rather, in our view, reasonable notice was afforded concerning the nature of the hearing and the issue involved, *viz.*, an area variance proceeding, to permit construction on a substandard lot.

## III.

On review of the BZA's decision,[3] the scope of our inquiry is limited to whether "findings made 'are supported by and in accordance with reliable, probative, and substantial evidence in the whole administrative record, *Schiffman v. ABC Board*, D.C.App., 302 A.2d 235 (1973), and whether the conclusions of the Board flow rationally from these findings, *Stewart v. BZA*, D.C. App., 305 A.2d 516 (1973).' *Marjorie Webster Junior College, Inc. v. BZA*, D.C.App., 309 A.2d 314, 319 (1973)." *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 320 A.2d 282, 285 (1974); *see* D.C.Code 1978 Supp., § 1–1509(e). Where the decision "follows as a matter of law from the facts stated" and the "facts so stated have . . . substantial support in the evidence," then the BZA decision must be affirmed. *Capitol Hill Restoration Society, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 398 A.2d 13, 15 (1979), quoting *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973). Petitioners contend, however, that the BZA decision fails to satisfy both aspects of the test, in that it was based on an improper application of the relevant statute and regulations,[4] and on deficient factual findings. We disagree.

---

**3.** *See* D.C.Code 1978 Supp., § 1–1510, providing for judicial review of administrative proceedings.

**4.** D.C.Code 1973, § 5–420(3); Zoning Regs., art. 82, § 8207.11. The statute empowers the BZA:

> Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under Sections 5–413 to 5–428 would result in peculiar

and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

In this proceeding, neither party questions the propriety of the legal standard applied by the BZA, or the characterization of relief from lot size requirements as an area variance. To obtain an area variance, it is well established that the property owner must prove "peculiar and exceptional practical difficulties" caused by compliance with the applicable regulation. *See, e. g., Wolf v. District of Columbia Board of Zoning Adjustment*, D.C.App., 397 A.2d 936 (1979); *Association for Preservation of 1700 Block of N Street v. District of Columbia Board of Zoning Adjustment*, D.C.App., 384 A.2d 674, 677–78 (1978); D.C. Code 1973, § 5–420(3). As this court stated in *Palmer v. Board of Zoning Adjustment*, D.C.App., 287 A.2d 535, 542 (1972):

> A clear definition of what constitutes "practical difficulties" has not been found. . . . Generally it must be shown that compliance with the area restriction would be unnecessarily burdensome. The nature and extent of the burden which will warrant an area variance is best left to the facts and circumstances of each particular case. [Footnotes omitted.]

Although each variance determination depends on the facts, "practical difficulties" will involve a less onerous burden than "unnecessary hardship," the more rigorous showing required to secure a use variance.[5]

Additionally, the applicant for an area variance must demonstrate that the "practical difficulties" of compliance are caused by the uniqueness of the property, not merely that his plight is unique. *See, e. g., Capitol Hill Restoration Society, Inc.*, supra at 15–16; *Association for Preservation, supra* at 678; *Palmer, supra* at 539. This requirement insures relief for problems peculiarly related to the applicant's land or structure, and not shared by other property in the neighborhood, thus avoiding a de facto amendment of zoning laws. *See*

*generally* 3 Anderson, American Law of Zoning § 14.55, at 32 (1968); 3 Rathkopf, The Law of Zoning and Planning ch. 45, § 2 (4th ed. 1978). Finally, upon a showing of unique practical difficulties, a variance may issue, subject to the proviso that relief can be granted "without substantial detriment to the public good and without substantially impairing . . . the zone plan." D.C. Code 1973, § 5–420(3).

Here, as the BZA found, the practical difficulty of compliance stems from the substandard size of the lot, recorded prior to adoption of current zoning regulations, and its location in a district zoned solely for residential purposes. Recognizing the dilemma created by pre-existing undersized lots, the zoning regulations provide:

> [I]n the case of an unimproved *lot* in single ownership on November 1, 1957, which has an area or *width of lot* less than that specified in paragraph 3301.1 for the *district* in which located and does not adjoin another unimproved *lot* in the same ownership, a *structure* may be erected thereon if both the area and *width of lot* are at least 80% of the area and *width of lot* specified under paragraph 3301.1, provided the *structure* complies with all other provisions of these regulations. [Zoning Regs., art. 33, § 3301.3; italics in original.]

The essence of the provision is that such undersized lots are considered standard and in compliance with the zoning regulation, even though deficient as to lot area. The property owner in this case narrowly missed qualifying as a matter of right for a building permit since the lot falls short of the 80% area requirement by a mere 165.55 square feet. Although unavailable here, the general exemption provided in the regulations indicates administrative recognition of the doubtful validity of area restrictions as applied to pre-existing substandard lots.[6]

---

5. The apparent reason for different standards is that an area variance relating to side yard, rear yard, frontage, setback of minimum lot requirements does not alter the character of the zoned district or introduce an incompatible use. *See, e. g., Association for Preservation, supra* at 677; *Palmer, supra* at 541.

6. The New Jersey Superior Court considering a similar exemption from minimum lot area requirements stated:

> It is clear that if this lot, located in a single-family residential zone, cannot be used for construction of the proposed dwelling, it will for all practical purposes be useless. *It*

 Similarly, where a property owner is deprived of all beneficial use of his property he is entitled to a variance. *See, e. g., Clerics of Saint Viator, Inc. v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 291, 294 (1974). Without this escape hatch, the application of the statute would be "unconstitutionally confiscatory." *Id.* at 294.

Our task might be simpler if the seller or buyer in this case owned a single substandard lot.[7] It is evident, however, that the property owner met the practical difficulty standard. As this court has stated:

> Where substandard lots (those having a smaller size or lesser frontage than the minimum) are involved *the practical difficulty is perforce of an extreme nature— an inability to put the lot to any conforming use.* In these instances the concepts of "practical difficulty" and "undue hardship" overlap so that the courts often tend to speak of them synonymously. [*Palmer, supra* at 542; emphasis supplied.]

Deprivation of all beneficial use is an extreme example of practical difficulty; area variances may issue, however, on less harsh facts. The seller in this case would be unable to reasonably dispose of his property for a permitted use, or to develop the lot himself.

 This is not a case where the applicant seeks to avoid added expense or inconvenience inherent in alternative methods of expansion, *see, e. g., Barbour v. Board of Zoning Adjustment,* D.C.App., 358 A.2d 326 (1976), or to relieve personal problems. Nor is the applicant merely seeking the most profitable use for his land.[8] This case presents a situation where the owner could never sell the unimproved lot for a residential use absent a variance. The minimum lot area restrictions are more than "unnecessarily burdensome" on these facts; they would effectively prevent development of the lot.

 We conclude the BZA expressed the facts on which it relied with sufficient specificity to convey to the parties, as well as the court, the basis for its decision. The findings are supported by substantial evidence;[9] and its legal conclusion flows rationally from the findings. Therefore, the order of the BZA is

*Affirmed.*

---

*is settled in this State, as well as in other jurisdictions, that a municipality may not destroy the economic value of an isolated lot by retroactively prohibiting the erection thereon of a single-family dwelling through adoption of a zoning ordinance prescribing minimum lot size requirements unless relief is available to the owner of such undersized lot.* Otherwise, the restriction against such use is plainly a taking of the property without just compensation. Relief is customarily provided by an exemption in the zoning ordinance or by the availability of relief by application for a variance from the board of adjustment. It is clear on the facts of this case that, if the owner has been required by the terms of the zoning ordinance to apply for a variance, such variance could not have reasonably been denied. [*Graves v. Bloomfield Planning Bd.,* 97 N.J.Super. 306, 235 A.2d 51, 55–56 (1967); emphasis supplied.]

7. This court has held that the self-created hardship doctrine does not apply to an application for an area variance. *See, e. g., Association for Preservation, supra* at 678; *A.L.W., Inc. v. District of Columbia Board of Zoning Adjustment,* D.C.App., 388 A.2d 428, 431–32 (1975).

8. In the context of *use* variances, this court has held "an inability to put property to a more profitable use or loss of economic advantage is not sufficient to constitute hardship." *Palmer, supra* at 542; *see also Taylor v. Board of Zoning Adjustment,* D.C.App., 308 A.2d 230 (1973); *Salsbery v. Board of Zoning Adjustment,* D.C. App., 357 A.2d 402 (1976).

9. We find without merit petitioners' contention that the decision is not based on substantial evidence in the record. The record supports the BZA findings that this is the only lot in the neighborhood, recorded prior to the zoning restrictions, which does not possess minimum lot dimensions. The owner of the lot testified to the date of recordation and the nonexistence of other substandard lots, and the Board stated that before rendering a decision it would examine the Baist Atlas (the official map), which was in relevant part marked as an exhibit.

Similarly, there is evidence in the record that the Board examined a map prepared by the D.C. Department of Transportation, indicating topography of the area.