Jasen, J.
The sole issue presented on this appeal is whether the Zoning Board of Appeals abused its discretion, as a matter of law, in denying petitioner’s application for a zoning variance.
In January 1970, petitioner Randolph Cowan purchased, at a tax sale, a substandard parcel of land in the Ronkonkoma Heights section of the Town of Smithtown. The parcel consists of three separate building lots and has a total land area of 7,500 square feet. The property is located in an "R-10” residential zone which authorizes the construction of single-family residences on minimum plots of 10,000 square feet. The land was originally divided into building lots by a map filed in 1911 and the . 10,000 square feet requirement was first imposed in 1949. In order to construct a residence on the Cowan property, a variance must be obtained to cover the total area deficiency, as well as deficiencies in the sizes of the proposed front and rear yards.
In January 1974, Cypress Homes, Inc., a builder and the prospective purchaser under a contract of sale, applied for the necessary variance, asserting that the Cowan parcel was the same size as other improved parcels on the same street. The Zoning Board of Appeals denied the application on February 26, 1974 and the contract of sale was rescinded.
The landowner, Cowan, then sought to obtain a building permit for the property, but the request was denied on the ground that a variance had not been obtained. Thus, on May 24, 1974, Cowan applied directly to the board for the necessary variance. His application was based on much the same contention as had been asserted in the earlier application by the builder: the fact that others had built on similarly sized properties and that a residence on his property would be in conformity with the character of the neighborhood. It was also claimed that denial of the variance would inflict "severe” economic hardship on the landowner.
On June 25, 1974, the board conducted a hearing on the Cowan application. The landowner submitted proof that, of *593 the 17 parcels on his block, nine parcels either met or exceeded the zoning requirements and that eight others did not. With respect to the eight substandard properties, two (the Cowan property and one other) had not yet been improved. Two substandard parcels had been improved after the board had granted requisite area variances. No evidence was introduced by petitioner to explain whether the remaining four improved but substandard properties were nonconforming uses constructed prior to the 1949 zoning ordinance or had been the subject of prior grants of variance or, finally, were constructed in plain violation of the zoning ordinance. The landowner did produce an analysis of the entire neighborhood, including several nearby blocks, which indicated that approximately 67% of the distinct parcels and approximately 77% of all the individual building lots in the area conformed to the zoning requirement. The applicant’s expert appraiser testified that the value of the real property, with the variance, would be approximately $7,500. Without the variance, the landowner would be able to sell the nonbuildable plot to the owner of an adjoining parcel for approximately $1,000. The landowner did not report the price he paid for the property at the tax sale.
Several persons appeared at the hearing in opposition to the variance application. The neighboring landowners testified that if Cowan were to build on his property, there would be less than the 100-foot distance between Cowan’s cesspool and their water wells, as required by the ordinance. This testimony was rebutted to some extent by a letter from the Suffolk County Department of Health to the effect that the Cowan cesspool could be located the necessary distance away from the neighboring wells and that any shortage in the distance between Cowan’s well and the neighbors’ cesspools could be compensated for by digging the Cowan well deeper. Unrebutted, however, was the testimony of one neighbor that all of the houses on substandard plots, save the two for which variances had been granted, had been constructed prior to the adoption of the 1949 area requirement. Hence, it was established that four of the six improved but substandard parcels were nonconforming uses.
On September 16, 1974, after the board had failed to pass upon his application, Cowan commenced an article 78 proceeding to compel the board to grant him a variance. At a regular meeting six days later, the board voted to deny the application. The board found that the character of the neighborhood *594 was substantially in accordance with the zoning requirements and that the applicant had failed to establish unnecessary hardship or practical difficulty. It was noted that "the applicant did not testify before the board as to what the loss of value in the premises would have been to him, since it was not revealed what the purchase price of the subject parcel was at the time applicant purchased same. Therefore, the board would also find that the testimony of applicant’s expert witness is incomplete and affords very little upon which this board can determine the loss in value to said applicant.”
Special Term awarded judgment to the board and dismissed the article 78 proceeding. The court ruled that "where, as here, a substandard parcel of property is purchased at a tax sale, the purchaser thereof cannot later claim that a denial of a variance for that property results in a severe economic hardship. The Court further finds that petitioner has failed to demonstrate that the character of the neighborhood is substandard.” Petitioner moved for renewal of the article 78 proceeding and for a hearing on the ground that the board had discriminated against him. The court granted the request for a hearing. The petitioner submitted proof that, on November 11, 1971, the board had granted area, front yard and rear yard variances to the owners of two parcels immediately adjoining petitioner’s. No other proof was put forward; instead, counsel for petitioner engaged in a lengthy oral argument. The court denied the motion for renewal on the ground that the petitioner had failed to establish his claim of discrimination. The Appellate Division, with one Justice dissenting, reversed the judgment of Special Term and directed that the board grant petitioner a variance. (51 AD2d 569.)
On appeal, petitioner presents two separate arguments in support of his claim for the variance. First, it is argued that the board, by granting variances to others similarly situated while denying relief to the petitioner, discriminated against him and, thereby, abused its authority. A second and distinct contention is that the petitioner had submitted ample proof that the application of the zoning ordinance to his property would result in economic hardship entitling him to a variance. We conclude that the record does not reveal either discrimination or abuse of discretion. We would, therefore, reverse the order of the Appellate Division and reinstate the judgment of Special Term.
As to the claim of discrimination, the law is well settled *595 that the mere fact that one property owner is denied a variance while others similarly situated are granted variances does not, in itself, suffice to establish that the difference in result is due either to impermissible discrimination or to arbitrary action. The controlling principles were stated by Judge Lehman, with his usual eloquence, long ago. "The mere fact that consents were granted to owners of premises somewhat similarly situated does not in itself show that consent was arbitrarily refused to this applicant. The question is not whether someone else has been favored. The question is whether the petitioner has been illegally oppressed. Exercise of discretion in favor of one confers no right upon another to demand the same decision. Unlimited discretion vested in an administrative board by ordinance is not narrowed through its exercise. * * * The [board] may refuse to duplicate previous error; it may change its views as to what is for the best interests of the [town]; it may give weight to slight differences which are not easily discernible. There are, of course, extreme cases where analogy is so complete, where grant of consent under similar circumstances has been so frequent, both before and after refusal in one instance, that inference arises that the refusal is the result of unfair discrimination and oppression. Especially is this true where strong reason is made out for granting the consent. In such case, perhaps, the courts may call upon the dispensing power to rebut such inference.” (Matter of Larkin Co. v Schwab, 242 NY 330, 336-337; accord Matter of Crossroads Recreation v Broz, 4 NY2d 39, 46-47.)*
Here, petitioner has shown only that two variance applications were granted to adjoining landowners in 1971. Although the board of health indicated that it was technically feasible to lay out water and sewage facilities in a manner that would not create an unsanitary condition, the zoning board was certainly free to conclude that, after three years from the last residential construction, the area had become too congested to permit further substandard development. The board could consider the existence of several nonconforming uses in the same immediate vicinity, uses that, constitutionally, the board was powerless to change. That the board had granted two variances in the past did not strap it to grant variances to all comers in the future automatically and without due regard for *596 changed conditions that might require a different result. Having granted two variances in the past, the board could properly decide that additional variances would impose too great a burden and strain on the existing community. More importantly, the board, after three years’ reflection, could find that previous awards had been a mistake that should not be again repeated. Certainly, the board was not bound to perpetuate earlier error.
Three additional factors are important. Only two variances were awarded in the past and these applications were decided at the same time. The evidence showed that the neighborhood, generally, was in conformity with the ordinance and the other exceptions on this particular block were not due to variance awards, but were created prior to the adoption of the present zoning requirement. Thus, this is certainly not the extreme case where the board had consistently granted variances and issued building permits to all in the neighborhood save a few selected out for discriminatory treatment. (See Matter of Ozolins v Horn, 26 AD2d 555.) Secondly, the timing of the two variance grants indicates that the awards were made on an individual basis viewed in the light of conditions then prevailing in the community. Phrased another way, there is no history of a consistently liberal board policy that was suddenly and dramatically changed to the disadvantage of this petitioner. Thirdly, the board denied a variance to a builder who sought to construct a residence on the same parcel. This indicates that the board had changed its policy on variances even before this petitioner applied for one. Thus, denial of his application was consistent with the board’s policy with respect to this neighborhood.
Turning to the second ground pressed by the petitioner— that the board abused its discretion in denying the variance— we find that the evidence substantiates the board’s conclusion that the petitioner had failed to establish that the denial of the variance would result in the infliction of either significant economic hardship or practical difficulty. Before the zoning authority is required to explain why the public health and welfare requires adherence to the zoning standard, the petitioner must first come forward with proof of significant economic injury. (Matter of National Merritt v Weist, 41 NY2d 438, 442, 445; see Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309.) The petitioner’s only proof on the question of financial hardship was to the effect that if the *597 variance was granted the real property for building purposes would be worth approximately $7,500, whereas the real property was worth only approximately $1,000 without the variance. However, in calculating whether financial hardship would be inflicted by adherence to the zoning standard, the inquiry should properly focus upon the value of the parcel as presently zoned, rather than upon the value that the parcel would have if the variance were granted. (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 9.) Concededly, the parcel, without the variance, has an economic value of at least $1,000. In the absence of proof as to what the petitioner paid for the property at the tax sale, there is no predicate which would support a finding of economic hardship in requiring the petitioner to adhere to the zoning ordinance. Thus, the petitioner failed to prove that the property "will not yield a reasonable return if the area standard restrictions are imposed.” (Matter of National Merritt v Weist, supra, at p 442.)
Moreover, the manner in which petitioner acquired the property, by purchase at a tax sale, indicates that any hardship was willingly assumed. In view of the tax sale purchase, the petitioner, is certainly "chargeable with knowledge of the interdictions of the zoning ordinance which limited * * * development.” (Matter of National Merritt v Weist, supra, at p 444.) Hence, economic loss, if there be any, was self-inflicted and self-created. While no proof of the purchase price has been adduced, it is reasonable to assume that the price obtained by the County of Nassau at the sale reflected the value of the property as restricted by the ordinance. Hence, the granting of the variance would, like as not, result in a windfall to petitioner well above the minimal price paid at the tax sale. While the fact that any financial hardship was self-imposed does not prevent the board from granting the variance in a proper exercise of its discretion (Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 315, supra), the existence of a self-created hardship does not entitle the landowner to demand a variance. (Matter of National Merritt v Weist, supra, at p 442.)
One further comment is necessary. The dissent places its primary reliance on the standard of review articulated in Matter of Fulling v Palumbo (21 NY2d 30, 33). Since 1967 when Fulling was decided, we have had numerous occasions to both clarify and modify much of its admittedly broad language. (E.g., Matter of National Merritt v Weist, supra, at p *598 442; Conley v Town of Brookhaven Zoning Bd. of Appeals, supra; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 455; Matter of 113 Hillside Ave. Corp. v Zaino, 27 NY2d 258, 261-262.) The present dispute simply involves a challenge to the rationality of an administrative decision. The petitioner does not challenge the constitutionality of the zoning ordinance as applied to his property. In this circumstance, it would be inappropriate to apply constitutional criteria (see, e.g., Matter of Grimpel Assoc. v Cohalan, 41 NY2d 431; McGowan v Cohalan, 41 NY2d 434) in lieu of the traditional standard applicable to the judicial review of all kinds of administrative determinations. Even the Fulling case recognized the limited nature of the judicial scrutiny of local zoning decisions. Notwithstanding the broader sweep of the opinion, the ultimate issue was stated to be whether "the Zoning Board of Appeals abused its discretion, as a matter of law”. (21 NY2d, at p 32.) The dicta to which the dissent averts is not now, if it ever was, representative of the state of the law. In fact, the cases which followed Fulling quite consistently adhered to the traditional standard. (E.g., Matter of 113 Hillside Ave. Corp. v Zaino, 27 NY2d 258, 261-262, supra; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 454, 455, supra; see Matter of National Merritt v Weist, 41 NY2d 438, 442-443, supra.) We have recently reiterated the rule.
"The oft-stated standard by which a request for an area variance is to be measured is whether strict compliance with the zoning ordinance will result in practical difficulties. (E.g., Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers, supra; Matter of Village of Bronxville v Francis, 1 AD2d 236, 238, affd 1 NY2d 839; 2 Anderson, New York Zoning Law and Practice [2d ed], §§ 18.32, 18.33, 18.40.) The local zoning boards have discretion in considering applications for variances and the judicial function is a limited one. The courts may set aside a zoning board determination only where the record reveals illegality, arbitrariness or abuse of discretion. (Matter of Fulling v Palumbo, 21 NY2d 30, 32; Matter of Lemir Realty Corp. v Larkin, 11 NY2d 20, 24.) Phrased another way, the determination of the responsible officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence in the record. (Matter of Wilcox v Zoning Bd. of Appeals of City of Yonkers, 17 NY2d 249, 255, supra.)” (Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309, 314, supra.)
*599 The crux of the matter is that the responsibility for making zoning decisions has been committed primarily to quasi-legislative, quasi-administrative boards composed of representatives from the local community. Local officials, generally, possess the familiarity with local conditions necessary to make the often sensitive planning decisions which affect the development of their community. Absent arbitrariness, it is for locally selected and locally responsible officials to determine where the public interest in zoning lies. (McGowan v Cohalan, 41 NY2d 434, 438, supra.) Judicial review of local zoning decisions is limited; not only in our court but in all courts. Where there is a rational basis for the local decision, that decision should be sustained. It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them. Nothing in Matter of Fulling v Palumbo (21 NY2d 30, supra) is to the contrary. Here, the record does not indicate that the zoning board acted in a manner that was in any way arbitrary, unreasonable, irrational or indicative of bad faith. Its decision, therefore, should not have been disturbed.
Accordingly, the order of the Appellate Division should be reversed and the judgment of Special Term reinstated.

 The Appellate Division’s statement to the effect that a claim of discrimination is made out simply if "Tweedledee is granted, and Tweedledum is denied” (51 AD2d, at p 570), is in plain conflict with established principles and cannot be sustained.