Richard MYRICK, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,

James G. and Barbara Lanahan
Mauro, Intervenors.

No. 89–837.

District of Columbia Court of Appeals.

Argued March 16, 1990.
Decided July 6, 1990.

Richard B. Nettler, Baltimore, Md., for
petitioner.

Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a Statement in Lieu of Brief, for respondent.

James G. Mauro, Jr., pro se, with whom
Phil Feola and Nancy H. Liebermann,
Washington, D.C., were on the brief, for
intervenors.

Before BELSON, SCHWELB and
FARRELL, Associate Judges.

FARRELL, Associate Judge:

Petitioner, Richard Myrick, contests a decision of the District of Columbia Board of Zoning Adjustment (BZA or Board) grant-

ing an application for an area variance to James G. and Barbara Lanahan Mauro, intervenors, for the construction of a 175 square foot addition to their Georgetown home located in an R–1–B district. The Mauros sought and received a variance allowing them to exceed the maximum allowable lot occupancy requirements and the minimum side-yard requirements, 11 DCMR §§ 403.2, 405.9 (1987), and to construct an addition to an already non-conforming structure, 11 DCMR § 2001.3. Mr. Myrick contends that the Mauros failed to make the showing of uniqueness that is necessary before the BZA may approve such a variance, and that the BZA's factual findings and legal conclusions were therefore not supported by substantial evidence. We agree and reverse.

I.

This appeal concerns two previously separate pieces of adjoining property, each improved with a two-story row dwelling, located on 32nd Street in Georgetown. The properties are known as 1691 and 1693 32nd Street, N.W., or Assessment and Taxation Lots 831 and 832, and together they occupy square 1281, lot 9.[1] The lots front on 32nd Street and are approximately the same size.[2] The homes on both lots have two story additions, sharing a common wall, which extend into the rear of each property. Both additions are approximately 8.5 feet wide but the 1693 addition extends approximately seven feet farther into the rear of lot 9 than does the 1691 addition.[3] There is a narrow open court, created by the addition to 1691, measuring approximately four feet wide by 22.22 feet long running along the southern property line. Abutting 1691 to the south is a semi-detached home located at 1689 32nd Street

which is owned by petitioner Myrick. This home shares a common wall with 1691 and also has a rear addition abutting the southern property line of 1691. The northern wall of this addition faces the narrow court behind 1691.

In November of 1987, the Mauros, after having lived in the house at 1693 for several years, purchased 1691 with the intention of combining the two structures and creating a larger and more livable space for themselves and their growing family. Shortly thereafter, they hired an architect to design an addition to 1691 and, on June 9, 1988, filed an application for an area variance for that property. The plans consisted of a two story addition to the rear of 1691 between the southern property line and the existing structure. The addition would fill the narrow court separating the existing structure from the neighboring property, and would also extend the 1691 addition an extra seven feet to the east to bring it in line with the adjoining structure at 1693.[4] This proposed addition exceeded both the maximum lot occupancy requirements for an R–1–B district and the minimum side-yard requirements. A variance was therefore required.

In support of their application, the Mauros contended that 1691, being little more than 12 feet wide, was one of the narrowest lots in the area and that the two story addition contained small and virtually unlivable rooms. The ground floor housed a very narrow kitchen measuring from 6.5 to 7.5 feet wide and a small, virtually unusable bathroom. The second floor contained a bedroom measuring only 7.5 by 10 feet. The proposed addition would allow them to create a dining room and family room on the first floor adjacent to an existing kitch-

---

1. The properties will be referred to individually as *1691* or *1693 and collectively as lot 9*.

2. 1691 is 12.28 feet wide and 1693 measures 12.78 feet wide. Both are 112.5 feet deep.

3. The addition to 1691 is 22.22 feet long while the 1693 addition measures 29.26 feet.

4. As the BZA noted in its Findings of Fact, the plans were revised several times in an effort to accommodate petitioner. This included the

elimination of the second floor of the addition along the southern property line so that the two story addition squaring and connecting the structures at 1691 and 1693 was set back approximately four feet from petitioner's property line.

A drawing made part of the record which depicts the proposed changes is reproduced as Attachment I to this opinion.

en in the adjoining structure at 1693 [5] as well as a master bedroom and bath on the second floor. The Mauros contended that without such an addition it was impossible for them to create any useful living space and that strict application of the zoning regulations would therefore "result in peculiar and exceptional practical difficulties [and] exceptional and undue hardship." D.C.Code § 5–424(g)(3) (1988).

A hearing was held on September 21, 1988 at which petitioner and Advisory Neighborhood Commission (ANC) 2A opposed the requested variance. The ANC contended that the problems faced by the Mauros were not unique to their property but affected the entire neighborhood and therefore should properly be addressed by seeking an amendment to the zoning regulations from the District of Columbia Zoning Commission. Petitioner argued that any claim of exceptional narrowness was defeated by the fact that 1691 and 1693 were being combined to create a 25–foot lot, as wide as most lots in the area and wider than some.[6] The BZA, however, found that

> the applicant has met its burden of proof by demonstrating, that given the exceptionally narrow shape and small size of the subject lot, and the existence of the structure for more than 100 years, exceptional practical difficulty and undue hardship would be imposed on the applicant by the strict application of the requirements of the R–1–B District.

The Board found that it was "not practical or feasible to redesign the interior of the two existing structures to meet the applicant's living needs," and concluded that

"because of the historic nature of the structures, [and] the size and shape of the subject property, the strict application of the lot occupancy and side-yard requirements of the R–1–B District can not be met without causing exceptional practical difficulties to the applicant." [7]

On April 10, 1989, petitioner moved for reconsideration or rehearing on the ground, *inter alia*, that when the BZA met to vote on the application on October 5, 1988, one of its members, John Parsons, announced that he had visited the site and did not believe that the addition would cause any adverse effect on the light or air of Myrick's property.[8] On May 31, 1989, the Board granted the motion for a rehearing solely on the issue of Parsons' visit and allowed further testimony responding to Parsons' conclusions regarding light and air.[9] On July 27, 1989, following a hearing, the BZA sustained its previous decision. This petition for review followed.

## II.

■ In reviewing decisions of the BZA we must determine whether the Board's findings are supported by substantial evidence of record and whether "conclusions legally sufficient to support the decisions flow rationally from the findings." *Levy v. District of Columbia Bd. of Zoning Adjustment*, 570 A.2d 739, 746 (D.C.1990); D.C.Code § 1–1509(e) (1987).

D.C.Code § 5–424(g)(3) allows the BZA to grant a variance

> [w]here by reason of exceptional narrowness, shallowness or shape of a specific

---

5. The Mauros had previously completed extensive renovations to 1693.

6. Petitioner also argued that the addition would have a negative effect on his property with regard to light and air. That argument was rejected by the BZA. Since we reverse on the ground that the Mauros failed to meet their burden of demonstrating that the property was unique, we do not address petitioner's argument that the Board's finding with regard to light and air was unsupported by substantial evidence.

7. By mid-May of 1989, the Mauros had obtained all necessary approvals and construction began shortly thereafter.

8. Myrick contended that such a visit was improper in that it did not take place in the presence of the parties and required a rehearing to allow the parties to respond. *See Committee for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177 (D.C.1982).

9. After learning that construction had begun, Myrick moved for a stay pending the outcome of any rehearing. That motion was granted on July 6, 1989. Construction, however, was virtually complete by that date.

piece of property ... or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation ... would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of the property.... Provided, that such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the Zoning Regulations and Map.

*See* 11 DCMR § 3107.2 (1987). As this court held in *Capitol Hill Restoration Society, Inc. v. District of Columbia Bd. of Zoning Adjustment*, 534 A.2d 939, 941 (D.C.1987) (*Capitol Hill*), that statute places the burden on the applicant to establish

first, that the property is unique because of some physical aspect or "other extraordinary or exceptional situation or condition" inherent in the property; second, that strict application of the zoning regulations will cause undue hardship or practical difficulty to the applicant; and third, that granting the variance will do no harm to the public good or to the zone plan.

*See also Roumel v. District of Columbia Bd. of Zoning Adjustment*, 417 A.2d 405, 408 (D.C.1980). In *Capitol Hill*, we reversed a decision of the BZA granting a variance for the conversion of a carriage house into a one bedroom home on the ground that the applicant had failed to establish that the property was unique. In concluding that the property was unique, the Board had relied on the property's location in an historic district and its size. *Id.* at 942. This court held that a property's location in an historic district is not sufficient to justify a finding of uniqueness; otherwise, every property so classified would be entitled to a variance. *Id.* We further held that although the house was located on a large lot, the testimony before the Board indicated that there were other similarly sized lots in the area and that the existing structure contained architectural characteristics typical of buildings on "oversized lots." The condition was therefore common to the entire neighborhood and could not support a finding of uniqueness. *Id.*

Consequently, in order to satisfy the threshold requirement of uniqueness necessary to justify a variance, the applicant must show "that the difficulties or hardships [are] due to unique circumstances peculiar to the applicant's property and not to the general conditions in the neighborhood." *Barbour v. District of Columbia Bd. of Zoning Adjustment*, 358 A.2d 326, 327 (D.C.1976) (quoting *Palmer v. District of Columbia Bd. of Zoning Adjustment*, 287 A.2d 535, 539 (D.C.1972)). *See also Taylor v. District of Columbia Bd. of Zoning Adjustment*, 308 A.2d 230, 234 (D.C. 1973) (circumstances creating hardship must *"uniquely* affect *petitioner's property"* (emphasis in original)). Granting a variance where a particular hardship is common to an entire neighborhood would amount to an amendment of the zoning regulations, an action only the Zoning Commission is empowered to take. *Capitol Hill, supra,* 534 A.2d at 942; *Taylor, supra.*

In the present case, the hardship from which the Mauros sought relief was the narrowness of lot 1691 and the even narrower rear addition on that property which, they contend, made it impractical to create any livable space without constructing the addition. In finding that the Mauros had met their burden of establishing uniqueness, the BZA relied on the narrowness of the lot and the fact that the structure had been in existence for more than 100 years. We hold that this was insufficient to support a finding of uniqueness.

As stated in *Capitol Hill*, the fact that a piece of property or a structure is located in an historic district cannot satisfy an applicant's burden of proving that the hardship is peculiar to that property or structure. While it may be true that the structure on 1691 has been in existence for over 100 years, there is nothing in the record to indicate that this is not the case for any other home in the Georgetown Historic District. Similarly, there was no testimony

indicating that the narrowness of the structure at 1691 or the narrowness of the existing addition to that structure was not a condition shared by other lots and homes in the area. In fact, the record indicates that lots of approximately the same size exist only one block away.[10] We note that the District of Columbia Office of Planning, while recommending conditional approval of the application, pointed out that the area "is developed primarily with row houses on small lots which are mostly non-conforming ... [and] the existing adjoining lots to the south [of 1691] in this block are also very small and non-conforming." The Office of Planning cautioned that "although the proposed addition in the rear yard would be minor in average conditions[,] ... in this case, the spaces in the area are rather small and a slight increase in bulk may have a disproportionate impact on the adjoining properties." Thus, although Mr. Mauro testified that the property was exceptionally narrow, we can find nothing in the record before the Board indicating that this condition was uncommon in the Georgetown Historic District.

It is also significant that the Mauros intended to combine 1691 and 1693 to create a lot 25 feet wide, larger than many in the area. Further, when the two rear additions are combined, the Mauros have approximately 17 feet of usable space rather than the 8.5 feet of 1691 alone. Since this is wider than many of the surrounding homes, the argument that the Mauros face an extraordinary or exceptional situation is unpersuasive. As the Office of Planning noted, the "combining of the two single family units into one single family unit enlarges available living space at the premises considerably. An expansion into the rear yard may be desirable but [is] not as critical and compelling."

The Mauros contend, nevertheless, that even as combined the structure remains unique in that, given their previous renovation of 1693, see note 5, supra, it would be too expensive to combine the two rear additions as they then existed and create the

kind of living space they desire. The Board apparently agreed, finding that

[s]trict application of the zoning Regulations does result in a practical difficulty. It is not practical or feasible to redesign the interior of the two existing structures to meet the applicant's living needs. The proposed addition is to the rear of the structure to create on the first and second floors more efficient and usable space. The existing additions on [1691 and 1693] are narrow and one is shorter than the other. The proposed addition creates usable and efficient floor space which can not be achieved without the addition.

We conclude, however, that while renovating the existing space may indeed have been more costly and more difficult, that fact alone does not present the kind of "exceptional practical difficulties" necessary to establish that the property is unique. *Barbour v. District of Columbia Bd. of Zoning Adjustment, supra,* 358 A.2d at 327 (increased expense of 50% to 90% to expand small kitchen if variance not obtained insufficient to establish uniqueness); *Whitpain Township Bd. of Supervisors v. Whitpain Township Zoning Hearing Bd.,* 121 Pa.Commw. 418, 428–430, 550 A.2d 1355, 1361 (1988) (economic hardship does not constitute uniqueness necessary to justify issuance of a variance); *H.J. Bernard Realty Co. v. Zoning Bd. of Review of the Town of Coventry,* 96 R.I. 390, 394–395, 192 A.2d 8, 11 (1963) (increased expense and inconvenience of compliance insufficient to justify variance). The Mauros do not contend that alternatives—albeit more costly ones—were unavailable, nor was there any such testimony before the Board.

Thus, we cannot find substantial evidence of record to support the Board's finding that the applicants met their burden of demonstrating that the property was unique. The Board was satisfied that granting the variance would "serve[ ] to enhance the purpose and intent of the zone plan by allowing the combination of two small nonconforming structures into a mod-

**10.** See the plat made part of the record and reproduced as Attachment II to this opinion.

erate-sized single-family home[,] which is the express goal of the R–1–B District." But aside from the fact that this combination could be achieved without a variance— though much less "practical[ly] or feasib[ly]" than the applicants desired—a general reliance on the "purpose and intent" of the zoning plan cannot substitute for compliance with the purposely stringent requirements for a variance. *See* 6 P. RO-HAN, ZONING AND LAND USE CONTROLS § 43.01[5] (1990) (power to grant variances should be "exercised 'sparingly' [as the] power to exempt, if used often, can easily destroy the zoning scheme").[11]

Accordingly, the order of the BZA is *Reversed.*

---

11. We reject the Mauros' argument that we are *without jurisdiction to hear this appeal because they were not served with a copy of the Petition for Review in a timely manner.* *See* D.C.App.R. 15(e) (1989). The Mauros cite no authority for the proposition that a failure to comply with the requirements of Rule 15(e) deprives this court of jurisdiction. Furthermore, while it does appear that there was some delay in providing the Mauros with a copy of the petition, they have shown no prejudice resulting from that delay. The record indicates that as early as January 30, 1989, Mr. Mauro received a letter from Myrick's attorney expressing an intent to appeal the Board's decision. Mr. Mauro responded that he had retained the law firm of Linowes & Blocher in anticipation of that appeal. The Mauros *nevertheless proceeded with construction which* was substantially completed prior to the time Myrick filed his petition for review.

We also reject the Mauros' suggestion that Myrick's petition for review was untimely because it was not filed within thirty days of the BZA's March 31, 1989 order. Myrick's motion for reconsideration was filed on April 10, 1989, and on July 26, 1989, the Board voted to sustain its original decision. Myrick filed a petition for review on July 28, 1989. Citing *Kenmore Joint Venture v. District of Columbia Board of Zoning Adjustment,* 391 A.2d 269 (D.C.1978), the Mauros contend that the filing of a motion for reconsideration does not affect the finality of a BZA order and does not toll the time for filing a petition for review. In *Kenmore,* however, we held that the *premature* filing of a petition for review—while a motion for reconsideration was pending—did not affect the finality of the original decision and did not deprive this court of jurisdiction where the motion for reconsideration was ultimately denied. *Id.* at 274. We noted that a petition for review is timely filed when, as in the present case, it is "filed in time from the date on which the Board disposed of pending motions for reconsideration." *Id. See* D.C.App.R. 15(b) ("The running of the time for filing a petition for review is terminated as to all parties by the timely filing ... of a petition for rehearing or reconsideration").

ATTACHMENT I

32nd STREET NW

PUBLIC ALLEY 20' WIDE

SCALE 1/16" = 1'

0 4 8 12 16 20 FEET

## ATTACHMENT II

