**William GILMARTIN, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**David C. Barnes, Intervenor.**

**No. 87–1253.**

District of Columbia Court of Appeals.

Argued May 22, 1989.
Decided Aug. 29, 1990.

---

Richard Halberstein, for petitioners.

Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., and Martin B. White, Asst. Corp. Counsel, Chevy Chase, Md., were on the Memorandum in Lieu of Brief, for respondent.

Aurelius K. Wilson, with whom Leonard L. McCants, Silver Spring, Md. was on the brief, for intervenor.

Before ROGERS, Chief Judge, and BELSON, Associate Judge, and MACK, Senior Judge.*

BELSON, Associate Judge:

* Judge MACK was an Associate Judge of the court at the time of argument. She became a Senior Judge December 1, 1989.

Petitioners[1] challenge an order of the respondent District of Columbia Board of Zoning Adjustment ("BZA" or the "Board") granting an application for an area variance to David C. Barnes and Janet B. Barnes to permit a decrease in length by one foot in a proposed parking space and to permit parking in the front rather than in the rear of the Barnes' property. These variances would enable Mr. and Mrs. Barnes to convert their two-story brick carriage house into a single-family residence while complying with the requirement that a parking space accompany each single-family residence.[2] Although we are unpersuaded by petitioners' challenges to BZA's order on the issues of uniqueness and lack of harm to the public good, we conclude that BZA's findings are insufficient to support its conclusion that the applicants would suffer practical difficulties if made to comply with the zoning regulations pertaining to parking for single-family dwellings. We therefore remand this case to BZA for further proceedings.

Intervenor, David C. Barnes ("Barnes" or "intervenor"), with his wife Janet B. Barnes, owns the subject property located just to the rear of 303 12th St., S.E., lot 814 within square 991 located within an R–4 district.[3] The subject lot is bounded on the east by petitioners Gilmartin and McCarthy's property and on the west by a public alley. It is improved with a two-story brick carriage house currently used for storage. Square 991 is bounded to the north by South Carolina Avenue to the south by D Street, to the east by 12th Street and to the west by 11th Street. The only direct means of access to the lot is via the public alleys, as there is no frontage on any public street. Both Gilmartin's and McCarthy's lots are beneficiaries of easements across the subject lot to the south (or rear) of the

carriage house so as to provide access to the alley.

Barnes is seeking variances from the zoning ordinances in order to convert the carriage house into a single-family residence. In his initial application to BZA, Barnes sought a variance from the prohibitions against converting an existing garage into a residence when located on an alley less than thirty feet wide. Barnes' initial application provided for two parking spaces on the lot, one to the north of the carriage house and one to the south, so as not to exacerbate local parking congestion. While the proposed parking space on the south of the carriage house was regulation-size, the proposed north parking space was smaller, measuring nine feet by eighteen feet. A regulation-size parking space is nine feet by nineteen feet. 11 DCMR § 2115.1 (1987). The Board approved Barnes' initial application despite petitioners' contentions that the south parking space would interfere with their easements. In order to avoid impeding the use of easements on the south side of the carriage house, Barnes sought to delete the south parking space from his application for a variance. BZA ruled, however, that a new application was required. This second application, the subject of this appeal, sought two specific variances: (1) from ordinance § 2115.1 requiring parking spaces to be a minimum of nine feet wide and nineteen feet long; and (2) from ordinance § 2116.2 providing that parking spaces may only be located in "rear" or "side" yards of residential lots (the Zoning Administrator ruled that the area to the north of the carriage house is the front).

After a hearing at which petitioners and other neighbors opposed the requested variance, BZA granted Barnes' variance appli-

---

1. Petitioners are William Gilmartin, Donald S. Good and John McCarthy. Petitioners own property fronting on 12th Street, S.E. in the 300 block.

2. 11 DCMR § 2101.1 (1987) requires the provision of a parking space with each dwelling unit for one-family dwellings.

3. An R–4 district consists of "those areas now developed primarily with row dwellings, but within which there have been a substantial number of conversions of the dwellings into dwellings for two (2) or more families." 11 DCMR § 330.1 (1987).

cation on October 7, 1987.[4] Petitioners then sought review of BZA's order in this court.

This court's standard for reviewing orders of BZA is well-settled: "we must determine: (1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings." *Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739, 746 (D.C.1990) (citing cases). *See also* D.C.Code § 1–1509(e) (1987 Repl.). "Generalized, conclusory or incomplete findings are insufficient; subsidiary findings of basic fact on all material issues must support the end result in a discernible manner." *Levy, supra,* 570 A.2d at 746. "If the agency makes no finding of fact on a material contested issue, this court on review may not 'fill in the gap by making its own determinations from the record,' but must remand the case." *Id.* (citations omitted). This court will defer to the Board's interpretation of its own regulations so long as its interpretation is consistent with the regulations and not "plainly erroneous." *Id.* We apply these standards of review to the issues before the court in this case.

Intervenor sought variances pursuant to D.C.Code § 5–424(g)(3) (1988 Repl.).[5] This court has enunciated the following three-part test, each part of which the applicant for the variance has the burden of satisfying before BZA may grant a variance:

An applicant must show, first, that the property is unique because of some physical aspect or "other extraordinary or exceptional situation or condition" inherent in the property; second, that strict application of the zoning regulations will cause undue hardship or practical difficulty to the applicant; and third, that granting the variance will do no harm to the public good or to the zone plan.

*Capitol Hill Restoration Society v. District of Columbia Bd. of Zoning Adjustment,* 534 A.2d 939, 941 (D.C.1987) (*Capitol Hill II*).

Petitioners contend that Barnes has failed to satisfy any of these three criteria and that BZA erred in concluding that he had met them. We will address, in turn, each of the three prongs of the test set forth in *Capitol Hill II, supra,* as they were applied by BZA.

■ Petitioners contend that private encumbrances such as an easement or covenant, especially those in existence before adoption of the zone plan, may not satisfy the uniqueness test because such encumbrances are "commonly found to exist with regard to all types of properties, and in all different zoning districts." Petitioners misapprehend the uniqueness criteria. As explained in *Capitol Hill II, supra,* the

Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under §§ 5–413 to 5–432 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map....

*See also* 11 DCMR § 3107.2 (1987).

---

4. BZA concluded in part as follows:

Sub-section 2115.1 of the Zoning Regulations requires that a parking space be a minimum of nine feet in width and 19 feet in length. The parking space proposed will be measured only 9 by 18 feet. Sub-section 2116.2 provides that parking may not be located in front yards of residential lots. The proposed parking will be located in the space determined by the Zoning Administrator to be the front yard of the lot.

The Board concludes that the applicant has met the burden of proof. The site is affected by an extraordinary condition in that development and use of the site is restricted by an easement. If the easement did not exist, the subject variance would not have been requested. The required parking space cannot be located in the rear yard as originally proposed because of the location of the easement in that area.

5. D.C.Code § 5–424(g)(3) provides:

rationale behind the uniqueness test is that difficulties that are common to or affect an entire neighborhood, or a substantial portion thereof, are properly addressed by seeking amendment of the regulations themselves from the Zoning Commission. *Id.* at 942 (citing *Taylor v. District of Columbia Bd. of Zoning Adjustment,* 308 A.2d 230, 234 (D.C.1973)); *Myrick v. District of Columbia Bd. of Zoning Adjustment,* 577 A.2d 757, 760 (D.C.1990). If such problems were addressed through individual variances, the effect would be a *de facto* amendment of the zoning regulations by BZA because requests by other owners similarly situated would have to be granted as a matter of equal protection under the due process clause. *Capitol Hill II, supra,* 534 A.2d at 942. It is the Zoning Commission, however, not BZA that is empowered to make such amendments to the overall zone plan.

█ The test follows from its rationale. To support a variance it is fundamental "that the difficulties or hardships [be] due to unique circumstances peculiar to the applicant's property and not to the general conditions in the neighborhood." *Palmer v. Bd. of Zoning Adjustment,* 287 A.2d 535, 539 (D.C.1972), *quoted in Myrick, supra,* 577 A.2d at 760. There is no requirement that the uniqueness "inheres in the land at issue...." *Capitol Hill II, supra,* 534 A.2d at 942. *See also Monaco v. District of Columbia Bd. of Zoning Adjustment,* 407 A.2d 1091 (D.C.1979); *Clerics of St. Viator, Inc. v. District of Columbia Bd. of Zoning Adjustment,* 320 A.2d 291 (D.C.1974). The statute does not preclude the approval of a variance where the uniqueness arises from a confluence of factors. The critical point is that the extraordinary or exceptional condition must affect a single property. *Capitol Hill II, supra,* 534 A.2d at 942. In this case the petitioners maintain that the exceptional condition is the general existence of easements. It is not, however, simply the existence of some unspecified easement that makes this property unique. What makes this property different from others is the fact that two specific easements cross the subject property in a particular fashion in

relation to the improvement on the property so as to preclude the use of that portion of the property for a parking space. Thus, it is the unique confluence of the particular location of the carriage house in relation to the property boundaries on the north and the easements on the south that makes it necessary for the intervenors to seek the variances, as BZA found. This, in effect, makes the topography of the property unique. *Cf. Peterson v. Washington Court Athletic Club,* 28 Ohio App.3d 90, 92, 502 N.E.2d 252, 254 (Ohio Ct.App.1986) (unique topography of the land prevented construction of the pool in any place other than the side yard). While encumbrances by easement are likely to be common on a large number of properties in the neighborhood as well as in other neighborhoods, it seems unlikely that many properties would be affected in this particular way, so that these particular types of variances would be required for a large number of properties and, if granted, constitute a *de facto* amendment of the zone plan.

This court has decided a closely-related issue in a manner adverse to petitioners' position in *Monaco v. District of Columbia Board of Zoning Adjustment, supra,* 407 A.2d 1091. There we held that private restrictive covenants "may be considered in their own right as an extraordinary condition of a particular piece of property...." *Id.* at 1099 (citing *Capitol Hill Restoration Society v. Zoning Commission,* 380 A.2d 174, 184–185 (D.C.1977) (*Capitol Hill I*)). We see no reason to distinguish between the covenants at issue in *Monaco* and the easements at issue in the case at bar. Consequently, we conclude that the Board's finding of uniqueness based on the existence of the easements across Barnes' "rear" yard is supported by substantial evidence in the record and is neither arbitrary nor capricious.

█ Petitioners also contend that BZA's authority to grant variance relief for exceptional or extraordinary conditions is limited to conditions brought about after adoption of the zoning regulations on March 12, 1958. The lot and carriage house were created prior to 1900 whereas the ease-

ments providing adjacent property owners "free and uninterrupted use, liberty and privilege of and passage in, over and along" the rear of the property were in place before 1920. Petitioners cite *De Azcarate v. District of Columbia Board of Zoning Adjustment*, 388 A.2d 1233, 1236 (D.C.1978), in support of their position. *De Azcarate*, however, does not purport to limit BZA's authority to grant variances to situations in which the exceptional conditions resulted from actions taken after adoption of the zoning regulations. Rather, the particular conditions in that case occurred after adoption of the zoning regulations. Our language in *De Azcarate, supra*, 388 A.2d at 1236, reveals that the court was simply addressing itself to the facts posed in the case before it. The court did not affirmatively hold that conditions existing before adoption of the regulations would not suffice as the basis for a variance.

In addition, the express wording of the statute does not limit the circumstances or conditions that can provide a basis for a variance to those that came about subsequent to adoption of the zoning regulations. The statute merely refers to "other extraordinary or exceptional situation [sic] or condition of a specific piece of property...." D.C.Code § 5–424(g)(3) (1988 Repl.). This is especially significant in view of the statute's specificity as to physical aspects of the property requiring that they exist "at the time of the original adoption of the regulations...." *Id.* Moreover, this court has held that prior knowledge or constructive knowledge or that the difficulty or hardship is self-imposed is not a bar to an area variance, the type of variance with which we are concerned in the instant case. *See A.L.W. v. District of Columbia Board of Zoning Adjustment*, 338 A.2d 428, 431 (D.C.1975). In *Taylor v. District of Columbia Board of Zoning Adjustment*, 308 A.2d 230 (D.C.1973), it was held that such knowledge or self-imposition of the hardship would ordinarily bar a use variance. *Taylor*, however, has been limited to requests for use variances, and has not been applied to applications for area variances. *See A.L.W., supra*, 338 A.2d at 431.

To the contrary, consideration of *Capitol Hill II, supra*, in conjunction with *Clerics of St. Viator, Inc. v. District of Columbia Board of Zoning Adjustment, supra, Taylor, supra*, and *De Azcarate, supra*, indicates that circumstances occurring before adoption of the zoning regulations may satisfy the statute. In *Capitol Hill II* we stated, "the extraordinary or exceptional conditions which justify a finding of uniqueness can be caused by subsequent events...." *Capitol Hill II, supra*, 534 A.2d at 942, citing *De Azcarate, supra*, 388 A.2d at 1237. The use of the word "can" implies that we viewed *De Azcarate* as extending the circumstances in which BZA could grant a variance from only those conditions that predated the promulgation of the 1958 zoning regulations to conditions that came into being after their promulgation. Indeed, this is the most reasonable reading of the statute.

■ Today we make explicit what was implicit in our previous opinions that certain "other extraordinary or exceptional situation [sic] or condition of a specific piece of property" as stated in § 5–424(g)(3) need not have preceded the promulgation of the zoning regulation. This is the interpretation adopted by BZA, it seems explicit in the statute, and we can discern no reason to reject this interpretation in the instant case. Consequently, BZA's decision to consider these easements merits our approval.

■ Turning to "practical difficulties," petitioners argue that the only such difficulties suffered by intervenor in complying with the applicable zoning regulations for parking for single-family residences would be the economic cost of having to park within the interior of the residence rather than in a non-conforming space outside in the yard. Upon review of the record we conclude that the findings of BZA are insufficient to support the conclusion that intervenor would suffer "practical difficulties" in complying with the requisite zoning regulations pertaining to parking, and that BZA failed to make findings on all material contested issues of fact.

The seminal case in this jurisdiction on this issue is *Palmer v. Board of Zoning Adjustment, supra.* In *Palmer* this court held that because of the nature of the respective types of variances and their effects on the zone plan, the higher "undue hardship" standard applies to requests for use variances while the lower "practical difficulty" standard applies to area variances. *Id.* at 540–41. *Palmer* did not establish a precise definition of what constitutes "practical difficulties." *Id.* at 542. The court merely set forth a general standard that the applicant must show that strict compliance would be "unnecessarily burdensome," leaving specific questions regarding the nature and extent of burden to a case-by-case analysis. *Id.* The court did state, however, that "it is certain that a variance cannot be granted where property conforming to the regulations will produce a reasonable income but, if not put to another use, will yield a greater return." *Id.* (footnote omitted). Although this statement was within the section of the opinion discussing area variances, it appears that it refers to the particular use of a property and thus the economic discussion is more appropriately confined to use variances. The *Palmer* test for determining "practical difficulties" for area variances has been further refined by our subsequent case law. In order to prove that an applicant suffers from "practical difficulties" two elements must be proven:

> The applicant must demonstrate that (1) "compliance with the area restriction would be unnecessarily burdensome ...", *A.L.W. Inc. v. District of Columbia Board of Zoning Adjustment,* D.C. App., 338 A.2d 428, 431 (1975); and (2) the practical difficulties are unique to the particular property. *Barbour v. District of Columbia Bd. of Zoning Adjustment,* 358 A.2d 326, 327 (D.C.1976).

*Association for Preservation of 1700 Block of N Street, N.W., and Vicinity v. District of Columbia Bd. of Zoning Adjustment,* 384 A.2d 674, 678 (D.C.1978) ("*1700 Block*").

Economic use of property has been considered as a factor in deciding the question of what constitutes an unnecessary burden or practical difficulty in variance cases that have used the *Palmer* analysis. In *Barbour v. District of Columbia Board of Zoning Adjustment, supra,* the court affirmed BZA's denial of an area variance application from certain side yard requirements in order to expand the size of the applicant's kitchen. The fact that alternative methods of expansion without necessitating the variance would cost fifty to ninety percent more, or that the other methods would reduce the interior living space or backyard space, was held insufficient to meet the burden imposed by the *Palmer* standard. *Id.* at 327. In *1700 Block, supra,* however, this court upheld BZA's grant of an area variance from off-street parking requirements to the YMCA. The difficulties in compliance were that recreational facilities would have to be reduced, including cutting the size of the swimming pool in half. Even if that were done, the cost of the parking spaces would still have been prohibitive. If the normal number of parking spaces were included, the YMCA would not have been able to provide all of its programs. In both *Barbour* and *1700 Block* the practical difficulties were ones of increased costs and reduced enjoyment of the property. Yet it was clear that in the latter the costs were far larger and the restrictions upon use were far greater. In *1700 Block,* moreover, there was no feasible alternative that would have complied with the regulations whereas in *Barbour,* there were different designs that would have been in compliance with the regulations, albeit with a consequent loss in back yard size or interior space in the rest of the house. *1700 Block, supra,* 384 A.2d at 678 n. 13.

Thus, *Barbour* suggests that a substantial increase in the cost of an intended improvement coupled with some loss in the overall utility of the property was not a practical difficulty that merited an area variance. *See also Myrick, supra,* 577 A.2d at 761–62 (cost of renovation of interior space insufficient to justify area variance where expansion of living space could be achieved in accordance with regulations). On the other hand, *1700 Block* indi-

cates that at some point economic harm becomes sufficient, at least when coupled with a significant limitation on the utility of the structure. It is for BZA, in the first instance, to weigh carefully the claims of potential difficulty advanced here in light of *Barbour, 1700 Block,* and other applicable precedents.

We repeat the observation we made in *Palmer, supra,* 287 A.2d at 542, that the "nature and extent of the burden which will warrant an area variance is best left to the facts and circumstances of each particular case." *See Wolf v. District of Columbia Bd. of Zoning Adjustment,* 397 A.2d 936, 942 (D.C.1979) (this court defers to BZA's determination of the practical difficulties so long as the requisite findings of fact are made).

BZA considers many factors in reaching a decision to grant or deny a variance. In *A.L.W., Inc. v. District of Columbia Board of Zoning Adjustment, supra,* the court considered the issue of whether an owner who knew or should have known of area restrictions should be granted an area variance. The court essentially held that prior knowledge or self-imposition of the difficulty did not bar granting an area variance. Rather, that fact was but one of many factors that BZA might consider in reaching its decision. *Id.* at 431–32 (citing *Ozolins v. Horn,* 26 A.D.2d 555, 270 N.Y. S.2d 1001, 1002–03 (1966)). As in *A.L.W.,* BZA may also consider a wide range of factors in determining whether there is an "unnecessary burden" or "practical difficulty." *See Monaco, supra,* 407 A.2d at 1097; *Clerics of St. Viator, supra,* 320 A.2d at 294. Increased expense and inconvenience to applicants for a variance are

among the proper factors for BZA's consideration. *Barbour, supra,* 358 A.2d at 327.

It is possible that a factor underlying BZA's decision in the instant case was that the requested variances were *de minimis* in nature.[6] The one foot difference in the size of the parking space is almost negligible, especially where, as here, the Board determined that the grant of the variance would not harm the public. The prohibition on parking in "front yards" seems more likely to have been aimed at lots such as petitioners' that front directly onto public streets than at lots along an alley, like intervenor's. In this case, because the lot is completely enclosed within other lots and a public area, the distinction between the "front" and "rear" yards appears at least negligible, if not irrelevant.

In order for BZA to deal with circumstances such as those presented in the application for variances in this case, BZA has the flexibility to consider a number of factors including, but not limited to: 1) the weight of the burden of strict compliance; 2) the severity of the variance(s) requested; and 3) the effect the proposed variance(s) would have on the overall zone plan. Although BZA's consideration of such factors seems to flow implicitly from its conclusion that a failure to grant the variances would result in "practical difficulties" for the intervenor, and it is likely that BZA considered it significant that the specific variances requested were slight and would not harm the overall zone plan, we must require more specific findings as to what practical difficulties BZA identified.

The Board also failed to make the requisite findings concerning each contested is-

---

**6.** This court may not substitute its reasoning for BZA's when that reasoning appears to be lacking in its order. *See, e.g., Levy v. District of Columbia Bd. of Zoning Adjustment, supra,* 570 A.2d at 753 ("A court may not supply a rationale for the agency decision by conjecture from what it did."). "[O]ur function is to 'assure that the agency has given full and reasoned consideration to all material facts and issues. The court can only perform that function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision.'" *Id.* (quoting *Dietrich v. District of Columbia Bd. of Zoning Adjustment,* 293 A.2d

470, 473 (D.C.1972), *aff'd on remand,* 320 A.2d 282 (D.C.1974)). On remand BZA may consider whether the variance sought is *de minimis* in nature and whether for that reason a correspondingly lesser burden of proof rests on the intervenor. *See* 3 R.M. Anderson, American Law of Zoning, § 2051 at 534 (1986 ed.); *Stewart v. Zoning Hearing Bd. of Radnor Township,* 110 Pa.Cmwlth. 111, 531 A.2d 1180, 1182 (1987) ("infinitesimal deviation [lot a few feet short of one acre] from complete compliance is clearly within the de minimis exception for granting dimensional variances.").

sue of material fact. *See Draude v. District of Columbia Bd. of Zoning Adjustment*, 527 A.2d 1242, 1251 (D.C.1987). BZA failed to address the feasibility of locating the parking space (or part of it) within the structure of the carriage house in order to comply with zoning regulations, or whether such an alternative was in the circumstances of the instant case itself a practical difficulty.[7] Accordingly, we remand this case to BZA for more thorough findings on "practical difficulties" consistent with the views expressed in this opinion.

 Turning to the matter of the public good, we note that the basic harm asserted by petitioners is that conversion of the carriage house to a residence with two bedrooms and two full baths is likely to result in the addition of more than one car to the neighborhood. Petitioners contend that this will exacerbate an already serious parking problem in the neighborhood. Petitioners argue that if the only space is on the north side of the carriage house, the difficulty of getting into that space will cause the resident to park on the street or, if not, to congest the alley area unduly and impede the provision of municipal services such as trash collection. Intervenor, on the other hand, contends that it is unlikely that someone with a space right next to the house would park out on the congested street where parking is scarce, especially at night when walking through the alley might be dangerous.

This issue presents a particularly fact-based question more appropriately resolved by BZA. The Board explicitly found that an "occupant of the carriage house is most likely to park in the front yard of the site." There is evidence in the record on both sides of the issue, and the evidence in

Barnes' favor is more than just his testimony. Petitioners themselves provided substantial evidence in Barnes' favor during cross-examination. Given the deference that we owe BZA, particularly on factual issues, we are satisfied that substantial evidence supports BZA's conclusion that there is no harm to the public good or the zone plan. The Board's conclusion is amply supported by the record. It flows rationally from its findings of fact. Consequently, we conclude that BZA's order finding that no public harm would result from granting the variances is supported by substantial evidence in the record and is neither arbitrary nor capricious.[8]

In view of the foregoing, this case will be remanded to BZA for further consideration, and the entry of appropriate findings on the issue of practical difficulties.

*It is so ordered.*

7. Barnes made only broad conclusory statements to the Board during the hearing to the effect that "the whole reason that I don't want to park inside" is because the property is more valuable to him with outside parking. Barnes provided no documentation to BZA as to what the economic or other loss to him would be if he parked inside rather than out. This court cannot consider for the first time on appeal figures listed in intervenor's brief at 15 n. 4 as to the extent of possible losses due to interior parking in the carriage house. In remanding

this case to BZA for further proceedings, BZA may seek additional evidence on this issue to support any findings on practical difficulty.

8. As to petitioners' contention that BZA's ruling in this case conflicts with their prior ruling in Barnes' initial application, case 14491, that the easements are not relevant, the record in that prior case is not before the court and thus we do not consider it here.